**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GURPREET SINGH,** | : | **CIVIL NO. 1:14-CV-1927** |
| | : | |
| **Petitioner,** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MARY SABOL, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

The case of Gurpreet Singh presents us with a recurring legal dilemma, a dilemma which now plays out upon what is a rapidly shifting legal terrain. The petitioner, a permanent resident alien and a citizen and national of India, was convicted in Clearfield County, Pennsylvania, in 2013 of state drug charges. As a consequence of this conviction, on April 17, 2014, Singh was arrested, placed by immigration officials in removal proceedings, and has been detained pursuant to a mandatory detention statute, 8 U.S.C. §1226(c), for the past 14 months while these immigration proceedings have progressed.

Currently, the status of these proceedings is that on May 15, 2015, the Board of Immigration Appeals (BIA) ruled against Singh, finding that he is subject to removal

from the United States.  Singh has appealed this BIA decision to the United States
Court of Appeals for the Third Circuit, and in connection with that appeal has filed a
motion for a stay of his removal.  That appeal, and motion, remain pending before the
court of appeals.  Thus, these proceedings are on-going, and there is no reasonably
foreseeable conclusion to this litigation on the merits of Singh's removal.  Yet, while
this merits litigation continues without a predictable or foreseeable outcome, Singh
remains held without any bail consideration for more than a year.

With the passage of more than one year in immigration detention, the petitioner
has come before this court renewing his petition for writ of habeas corpus[1], seeking
an individualized bail consideration.  We have afforded the parties a full opportunity
to address the legal issues presented by this petition, and on June 3, 2015, conducted
a hearing in this matter, where the parties were invited to advance legal arguments,
and make factual presentations or proffers regarding what they considered relevant to
this bail determination.

Having conducted these proceedings, and fully developed the record, for the
reasons set forth below, we conclude that in these circumstances basic considerations

---

[1]Singh had initially filed this petition on October 3, 2014.  (Doc. 1.)  On
February 13, 2015, the district court denied Singh's petition, but did so without
prejudice to the renewal of the petition once a year in immigration custody had
elapsed.  (Doc. 15.)  Singh then timely renewed this petition on April 20, 2015.
(Doc. 16.)

of due process now require that Singh receive prompt, individualized bail consideration, at a hearing where the government bears the burden of proving that Singh's continued detention is necessary to fulfill " 'the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.' " Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015).  Accordingly, through this opinion and order we prescribe the process by which Singh will receive this bail consideration from an Immigration Judge, while we retain the authority to conduct our own individualized bail consideration, if necessary, as part of this court's federal habeas corpus jurisdiction.

## II.     Discussion

### A.     The Legal Terrain Governing Bail Determinations in Immigration Detention Cases

One of the statutory and constitutional duties conferred upon this court is the responsibility to address federal habeas corpus petitions filed by immigration detainees who challenge their immigration detention as unconstitutionally excessive.  Over the past several years, case law in this field has evolved significantly, providing far greater clarity to the courts regarding the benchmarks they should apply when discharging this important responsibility, a duty rooted in our constitution.

Most recently, in Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469 (3d Cir. 2015), the court of appeals has provided us with an analytical paradigm to

apply when assessing these immigration excessive detention claims.  As the court

explained in outlining the legal terrain in this field:

> Before 1996, significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes.  Demore v. Kim, 538 U.S. 510, 518–19, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003).  Congress fixed this problem by enacting section 1226(c), expanding the range of serious crimes for which the Government was required to detain convicted aliens.  Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond. Id. at 521, 123 S.Ct. 1708.  The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the Constitution.  Id. at 531, 123 S.Ct. 1708.  However, as we discuss below, we read Demore as also recognizing that there are limits to this power.  Diop, 656 F.3d 221; Leslie v. Attorney Gen. of the United States, 678 F.3d 265 (3d Cir.2012).  When the Supreme Court upheld the constitutionality of the law in Demore, it also gave us insight into how, from a due process perspective, section 1226(c)'s allowance of detention without bail worked.  The court reiterated the fundamental idea that aliens are protected by constitutional due process.  Demore, 538 U.S. at 523, 123 S.Ct. 1708 (citing Reno v. Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)).  But, it put the alien's issue in perspective, saying " '[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.' " Id. at 521, 123 S.Ct. 1708 (quoting Mathews v. Diaz, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)).  The court went on to say that applying " 'reasonable presumptions and generic rules' " to groups of aliens—for purposes of due process—can be consistent with the idea that aliens can be treated differently.  Id. at 526, 123 S.Ct. 1708 (quoting Flores, 507 U.S. at 313, 113 S.Ct. 1439); see also Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952).  The court, in essence, concluded that Congress lawfully required the Attorney General to make presumptions of flight and dangerousness about the alien solely because he belonged to the group of aliens convicted of the types of crimes defined in section 1226(c).

Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 472 73 (3d Cir. 2015).

Thus, the court in Chavez-Alvarez recognized that Demore held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore Court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal which typically should not exceed 6 months. Thus, while Demore addressed the due process issues that arise from the fact that, for certain criminal aliens, detention pending removal is mandatory, it is also clear that courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process.

Further, the court in Chavez-Alvarez provided us with clear guidance in assessing the reasonableness of the duration of any mandatory immigration detention. This determination entails a balancing test, and while noting that "[b]y its very nature, the use of a balancing framework makes any determination on reasonableness highly fact-specific," Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 474 (3d Cir. 2015), the court enjoins us that there are several guideposts which we must consider. First, in a case where an alien is prosecuting a good faith challenge to his or her removal from the United States, the appellate court held that, " beginning sometime after the six-month time frame considered by Demore, and certainly by the

time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute.  We conclude that the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary."  Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015).

In prescribing this one-year time frame beyond which the presumption of detention is sufficiently eroded that an individualized bail consideration is necessary, the appellate court also defined what showing the government must make in order to justify the continued detention of the petitioner.  According to the court, the immigration statute " 'implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.' " Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015). Further, once "detention becomes unreasonable, the Due Process Clause demands a hearing, *at which the Government bears the burden of proving that continued*

*detention is necessary to fulfill the purposes of the detention statute.*"  Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011)(emphasis added.)

In this case the respondents have suggested at the June 3 hearing conducted by the court that Chavez-Alvarez does not apply to Mr. Singh's situation, noting that in May of 2014, after some 13 months of detention, the Board of Immigration Appeals (BIA), ruled against Singh.  With this BIA ruling, respondents argue that Singh's detention shifted from a pre-removal detention under 8 U.S.C. §1226(c), to a post - final removal order detention governed by a different provision of the Immigration and Naturalization Act, 8 U.S.C. §1231.  On the basis of this statutory parsing and the distinction between two types of immigration detention, respondents invite us to forego the analysis otherwise mandated by Chavez-Alvarez.

Upon consideration, we will decline this invitation.  We believe that there are several problems with respondents' position.  First, we note that, while the BIA has ruled, Singh is currently challenging that ruling in the United States Court of Appeals for the Third Circuit, and has sought a stay of removal pending the resolution of this matter on appeal.  It is well-settled that "a petitioner requesting a stay of removal [may obtain a stay if he can] demonstrate (1) a likelihood of success on the merits of the underlying petition; (2) that irreparable harm would occur if a stay is not granted; (3) that the potential harm to the moving party outweighs the harm to the opposing party

if a stay is not granted; and (4) that the granting of the stay would serve the public interest." Douglas v. Ashcroft, 374 F.3d 230, 233 (3d Cir. 2004); Nken v. Holder, 556 U.S. 418, 426 (2009).   In the event that a stay of removal is granted by the appellate court, it is also clear that by operation of law that stay withdraws Singh's case from post-removal status, and his continued detention is governed by 8 U.S.C. §1226(c), and not 8 U.S.C. §1231. Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012).   Should this transpire, the analytical paradigm adopted by the court of appeals in Chavez-Alvarez in pre-removal detention cases would continue to control here.

Given the complexity of the issues raised by Singh, we believe that a weighing of the equities likely favors the granting of a stay of removal by the appellate court. Indeed, we note that such stays have been granted by the court of appeals in similar cases.  See  e.g., Chavez-Alvarez v. Attorney Gen. U.S., 783 F.3d 478, 481 (3d Cir. 2015); Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012).   Therefore, recognizing the likelihood of a stay in this matter, we will treat this case as governed by Chavez-Alvarez, until such time as the court of appeals informs us that it is not.

Several other factors favor consideration of this case in accordance with Chavez-Alvarez.  First, we note that in the past the court of appeals has declined to adopt similar invitations by the government to carefully parse lengthy detention

periods between pre- and post-removal detention, and has rebuffed efforts to have these matters of statutory interpretation trump due process concerns. See Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012). Further, it is clear that the animating concern in all these cases, which have afforded due process protections to aliens enduring extended periods of immigration detention, has been the overall length of that detention. See e.g., Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015); Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012); Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011). It would be anomalous to conclude that the duration of the detention–which has been the touchstone of the courts' recent analysis of these claims–somehow has less relevance if that detention can be parceled out between various detention statutes. Certainly for the person being detained the effect of the prolonged imprisonment is the same regardless of the statutory label placed upon that detention. It is also worth noting that, the Supreme Court's due process analysis of both pre-and post-removal order detention has proceeded from the premise that the presumptively reasonable duration of either a pre- or post removal period of immigration detention was only six months. Demore v. Kim, 538 U.S. 510, 518 (2003)( 6 month pre-removal detention); Zadvydas v. Davis, 533 U.S. 678 (2001)(6 month post-removal detention). Thus, the Supreme Court's analysis of the due process requirements in this setting has been guided by its

view that the combined presumptively reasonable period of pre- and post-removal

detention combined would be one year or less, a period of time which has been

exceeded in this case.

Taking all of the factors into consideration we conclude that an assessment of

whether Singh qualifies for individualized bail consideration should be undertaken

pursuant to the standards announced by the court of appeals in <u>Chavez-Alvarez</u>.

Therefore, we will apply this analytical paradigm in assessing whether Singh is

entitled to a bail hearing.[2]

**B.** **Under Chavez-Alvarez Singh Has Made a Prima Facie Showing That He is Entitled to Individualized Bail Consideration**

Applying <u>Chavez-Alvarez</u> to the facts of this case, we conclude that Singh has

made a *prima facie* showing justifying an individualized bail hearing.  At the outset,

all parties agree that Singh's legal challenge to his removal is presented in good faith,

the initial benchmark cited by the court in <u>Chavez-Alvarez</u>.  Further, while we need

not address the ultimate merits of this removal order, we note that the Supreme Court's

---

[2]Of course if we have erred in this analysis the government is not without recourse.  Respondents could simply apply for an expedited resolution of the stay petition filed by petitioner in the court of appeals in this case, explaining that an expedited denial of the stay is necessary to prevent any bail consideration for Singh and to ensure his continued, on-going and indefinite detention.  If the court of appeals deemed such detention without a hearing to be appropriate, it could act upon the government's request, deny a stay, and provide all parties with prompt clarity on this score.

June 1, 2015 decision in <u>Mellouli v. Lynch</u>, No. 13-1034, 2015 WL 2464047 (U.S. June 1, 2015), raises substantial and non-frivolous questions concerning the degree to which state drug charges which have no federal analogue may serve as the foundation for removal from the United States.  Thus, Singh's removal litigation is plainly brought in good faith and raises questions of arguable merit.

It is also undisputed that the current duration of Singh's detention now exceeds one-year a period of time which <u>Chavez-Alvarez</u> found to be presumptively excessive. Although we consider this one-year time frame as an apt starting point for our analysis the respondents have urged us to refrain from automatically applying this one-year time frame as a benchmark of reasonableness, observing that "[b]y its very nature, the use of a balancing framework makes any determination on reasonableness highly fact-specific."  <u>Chavez-Alvarez v. Warden York Cnty. Prison</u>, 783 F.3d 469, 474 (3d Cir. 2015).

While we agree with the respondents, we find that the more fact-specific approach which they urge us to follow still strongly supports a finding that Singh has made a *prima facie* case justifying individualized bail consideration.  Gurpreet Singh is 45 years old.  Other than the state conviction which forms the basis of this removal proceeding, he has no prior criminal convictions.  Moreover, it appears from the state court dockets in this underlying criminal case that in the course of these proceedings

11

Singh was released on a $5,000 unsecured bail.  Those state court dockets further reflect that Singh consistently appeared in court as required, including appearing for sentencing in this state case.  Moreover, Singh has substantial and enduring familial ties to the United States, as both his wife and his son are naturalized U.S. citizens.  Finally, it cannot be gainsaid that Singh is actively engaged in a legal struggle to remain in the United States, a struggle which he would lose by forfeiture if he were to flee.  Thus, a fact-specific inquiry into Singh's circumstances confirms that Singh has made the *prima facie* showing necessary to obtain individualized bail consideration under Chavez-Alvarez.[3]

Having reached this judgment regarding whether Singh is entitled to a bail hearing, we turn to the question of what process should be afforded to Singh.

---

[3]Citing the fact that Singh pleaded guilty to a state drug charge, the respondents have argued that this offense conduct may reflect some degree of danger to this community.  While this certainly may be so, the fact of a drug conviction, by itself, does not preclude bail consideration in immigration detention cases under the legal standards prescribed by the court of appeals.  Indeed, at the direction of the court of appeals, Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012), we have afforded bail to immigration detainees who have been awaiting removal following a drug conviction.  See Leslie v. Holder, 865 F. Supp. 2d 627 (M.D. Pa. 2012).

**C.** **Singh Should Be Afforded a Prompt Individualized Bail Determination By an Immigration Judge, While This Court Will Retain Jurisdiction to Conduct Its Own Bail Review, if Necessary, Pursuant to Its Habeas Corpus Jurisdiction**

Finding that an individualized bail hearing is appropriate in this case, we turn to the process for ensuring such a bail review.  In this regard, the respondents have urged us to defer to the Immigration Judge in the first instance, and refer this matter to the Immigration Judge for a bail determination.  The parties also jointly agree that any such hearing should be conducted promptly, on or before June 17, 2015, and jointly recommend that this court provide guidance to the Immigration Judge regarding the legal standards prescribed by the court of appeals for such individualized bail hearings.

We agree that this is an appropriate course to follow.  Indeed, in Chavez-Alvarez, the appellate court suggested that, in many instances, this initial bail determination can, and should, be made by the Immigration Judge, applying the constitutional benchmarks outlined by the courts.  Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 n.12 (3d Cir. 2015).  This guidance, in turn, is consistent with other case law in this field, where federal courts have frequently referred these bail questions to Immigration Judges in the first instance.  See, e.g., Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942 (9th Cir. 2008); Reid

v. Donelan, 991 F. Supp. 2d 275 (D. Mass. 2014); Chen v. Aitken, 917 F. Supp. 2d 1013 (N.D. Cal. 2013); Sengkeo v. Horgan, 670 F. Supp. 2d 116 (D. Mass. 2009); Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008).

Yet, while we are "[m]indful of the deference which should be accorded in the first instance to agency decision-making processes," Leslie v. Holder, 865 F. Supp. 2d 627, 631 (M.D. Pa. 2012), a factor which weighs in favor of allowing an Immigration Judge to make this initial bail determination, we also recognize that we have an independent responsibility in this case to determine whether conditions of release may be set in this matter.  Indeed, this court has in a number of instances conducted bail review hearings in immigration habeas matters.  Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009)(two years detention, court schedules hearing to review case).  In still other instances, the remedy imposed by the court has been an order directing the outright release of the alien.)  See, e.g., Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Nunez-Pimentel v. U.S. Dep't of Homeland Security, No. 07-1915, 2008 WL 2593806 (M.D. Pa. June 27, 2008.)

The authority of this court to set conditions of release for a petitioner in a federal habeas corpus proceeding springs from several well-established legal sources. Settled case law has long recognized that the power to set bail in habeas proceedings is a legal and logical concomitant of the court's habeas corpus jurisdiction. In fact, our authority to act in these matters has been long recognized, and carefully defined, by the courts which have held generally in habeas corpus matters that the court may consider bail motions and have prescribed legal standards for such relief, stating that:

> [C]ourts that have been faced with requests for bail prior to ruling on a habeas petition have developed standards requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both. See, e.g., Eaton v. Holbrook, 671 F.2d 670, 670 (1st Cir.1982); Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir.1981); Calley v. Callaway, 496 F.2d 701, 702 (5th Cir.1974).

Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986).

This settled principle, in turn, has been expressly extended to habeas corpus petitions lodged by immigration detainees, Mapp v. Reno, 241 F.3d 221 (2d Cir. 2001), where the court of appeals correctly concluded that in extending this settled tenet of habeas corpus jurisdiction to petitions by immigration detainees, "we are not required to break new ground so much as to revisit a place where we have been before." Mapp v. Reno, 241 F.3d at 225. The Mapp court's analysis of this issue is consistent with case law in this circuit, Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir.

1986), is highly persuasive, and this court has previously cited <u>Mapp</u>'s analytical paradigm with approval.  <u>See</u> <u>Nasr v. Hogan</u>, No. 08-415, 2008 WL 2705533 (M.D. Pa. July 10, 2008).

As a general rule, "courts that have been faced with requests for bail [in habeas proceedings] have developed standards requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both." <u>Lucas v. Hadden</u>, 790 F.2d 365, 367 (3d Cir. 1986).  In the context of bail petitions by immigration detainees seeking relief in federal habeas corpus proceedings, "a court considering a habeas petitioner's fitness for bail must inquire into whether 'the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.' <u>Iuteri</u>, 662 F.2d at 161; <u>see also</u> <u>Grune</u>, 913 F.2d at 44." <u>Mapp v. Reno</u>, 241 F.3d 221, 230 (2d. Cir. 2001). With respect to this standard:

> When other district courts . . . have applied the[ese] standards . . . , "[a]n essential factor ... [has been] the necessity that the petition present merits that are more than slightly in petitioner's favor." <u>Richard v. Abrams</u>, 732 F.Supp. 24, 25 (S.D.N.Y.1990) (citing <u>Rado v. Manson</u>, 435 F.Supp. 349, 350-51 (D.Conn.1977) (holding that petitioner must be (1) "an exceptionally strong candidate for bail" and make (2) claims of a "substantial nature upon which [he] has a high probability of success"); <u>Rado v. Meachum</u>, 699 F.Supp. 25, 26-27 (D.Conn.1988) (holding that the relevant factors are whether (1) "substantial claims" are set forth in

16

the petition; (2) there is a "demonstrated likelihood the petition will prevail"; and (3) there are "extraordinary circumstances" attending the petitioner's situation which would "require" the grant in order to make the writ of habeas corpus "effective," presumably if granted) (citing Stepney v. Lopes, 597 F.Supp. 11, 14 (D.Conn.1984)); accord Harris v. United States, 1997 WL 272398, at *1.

D'Alessandro v. Mukasey, 2009 WL 799957 at *3 (W.D.N.Y. 2009).

Therefore, as a threshold matter, the petitioner bears the burden of showing that this case presents extraordinary circumstances warranting bail consideration. In making this threshold determination we are cautioned to consider both the merits of the claims made in the petitioner's habeas corpus petition, and to ascertain whether the case presents exceptional circumstances which make the petitioner a proper candidate for bail. As part of this process, we also must assess whether "'extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.'" Mapp v. Reno, 241 F.3d at 230. These "extraordinary circumstances" may, in proper instances, include medical considerations relating to the petitioner's health, family and medical needs. D'Alessandro v. Mukasey, 2009 WL 799957 at *3.

Once it is determined that the petitioner has made the threshold showing that extraordinary circumstances exist which justify the exercise of this court's habeas corpus jurisdiction, the burden of proof then shifts to the respondents. As the United States Court of Appeals for the Third Circuit has expressly found in this setting where

we are considering the alleged unreasonable detention of an immigration detainee "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011).

In the instant case we are called upon to reconcile our obligation to provide an appropriate degree of deference to the judgment of an agency on matters within the jurisdiction of that agency, with our independent obligation to make bail determinations in federal habeas corpus cases. Recognizing the concurrent jurisdiction and responsibilities of this court and the Immigration Judge in these bail matters, and "[m]indful of the deference which should be accorded in the first instance to agency decision-making processes," Leslie v. Holder, 865 F. Supp. 2d 627, 631 (M.D. Pa. 2012), we will defer to the Immigration Judge to make a prompt individualized bail determination, while retaining jurisdiction to conduct our own bail review, if necessary, under the standards governing bail in habeas corpus proceedings. We will also accede to the parties' joint request that we provide some guidance to the immigration judge regarding the legal standards prescribed by the Court of Appeals in these cases. See generally, Leslie v. Holder, 865 F. Supp. 2d 627 (M.D. Pa. 2012).

An appropriate order follows.

18

**_S/Martin C. Carlson_**

Martin C. Carlson

United States Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GURPREET SINGH, | : | CIVIL NO.1:14-CV-1927 |
| | : | |
| Petitioner, | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| MARY SABOL, et al., | : | |
| Respondents. | : | |

## ORDER

AND NOW, this 4th day of June 2015, in accordance with the accompanying memorandum of law, and at the request of the respondents, IT IS ORDERED as follows:

1.  On or before **June 17, 2015**, an Immigration Judge shall afford the petitioner an individualized bail hearing, consistent with the legal benchmarks outlined in the accompanying memorandum of law.

2.  At this hearing the Immigration Judge must make an individualized inquiry into whether detention is still necessary to fulfill the purposes of ensuring that the petitioner attends removal proceedings and that his

release will not pose a danger to the community.  Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015).  Further, at this hearing the Government bears the burden of presenting evidence and proving that continued detention is necessary to fulfill the purposes of the detention statute.  Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011).

3.  The parties shall report to this court on the outcome of this individualized bail determination on or before **June 19, 2015**.

4.  If necessary, this court will conduct a bail determination, under the standards governing bail in habeas corpus proceedings, at a hearing which is scheduled for **June 23, 2015 at 1:00 p.m.** in Courtroom 5, United States Courthouse, Harrisburg, Pennsylvania.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge